(112 App. Div. 845)

BRADY v. POWERS et al.

(Supreme Court, Appellate Division First Department. April 6, 1906.)

1. PARTNERSHIP—CREATION—CONTRACT—NONCOMPLIANCE—WAIVER.

Partners in a firm engaged in giving indoor bicycle races entered into an agreement with a third person whereby he should become a partner in consideration of his paying $2,000, and whereby he should have a one-fourth interest in the venture. The third person did not pay the $2,000 to the partnership, but it was subtracted from his share of the proceeds of the next meet after the agreement. *Held*, that the third person's failure to pay the money was waived by the partners.

2. SAME—ACTIONS FOR DISSOLUTION—DEFENSES—EVIDENCE.

Evidence in a suit for the dissolution of a partnership engaged in the giving of bicycle races examined, and *held* to support a finding that the money received by plaintiff in consideration of his settlement of a prior suit against the defendants and another, in which he asked for an accounting for his share in a firm engaged in giving pugilistic exhibitions, was not received in settlement of his claim in the profits of the firm engaged in giving bicycle races, and the receipt of the money did not constitute a bar to the suit.

3. SAME—PARTNERSHIP AT WILL—DISSOLUTION.

The sole business of a partnership consisted in giving an annual bicycle race. It had no working capital and no assets save the right to lease a place for the holding of the race. The partners entered into the partnership under an oral agreement. *Held* that, in order to effect a dissolution of the partnership, which was one at will, there must be either a mutual agreement to dissolve, or notice by a partner desiring a dissolution to his copartner of his election to terminate the partnership.

4. SAME.

The bringing of an action for the dissolution of a partnership and for an accounting does not constitute an election on the part of plaintiff to exercise his right to dissolve the partnership, which was one at will, where in his complaint he expressly considered the partnership as existing.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, § 768.]

5. SAME.

In a suit for the dissolution of a partnership and for an accounting, defendants answered that there was no "partnership now existing between the plaintiff and the defendants, * * * and that every and all business relations heretofore existing * * * have terminated." *Held*, that the answer constituted a notice that defendants desired to exercise their right to dissolve the partnership.

6. SAME.

The sole business of a partnership consisted in giving an annual bicycle race. It had no assets save the right to lease a place for the holding of the race. The agreement for the partnership was oral, and it continued during the will of the partners. There was nothing to show that two of the partners leased the place for the races before service on their copartner of their election to terminate the partnership. *Held*, that the fact that the partners continued to give the races in the same place did not prevent their terminating the partnership, and they were not required to account to the copartner for the profits made from the business after the service of the notice of dissolution.

**7. SAME—DIVISION OF PROFITS.**

The business of a partnership consisted in giving bicycle races. It had no assets save the right to lease a place for the holding of the race. It did not appear that any amount of the proceeds of the race of one year was carried over as capital for the next year. Privileges were sold, and from the moneys thus received and on the credit of the enterprise the preliminary arrangements for each annual race were met, and the box receipts were the source to which all looked for compensation. The agreement for the partnership was oral, and the same might be terminated at will. After the meet for 1900, two of the partners served a notice of dissolution on their copartner. The partners continued the business for the years 1901 and 1902. *Held*, that the copartner was not entitled to his share of the profits made during the years 1901 and 1902; there being nothing to show that the proceeds of the race of 1900 were used for the business during the subsequent years.

Action by William A. Brady against Patrick T. Powers and another. From an interlocutory judgment dissolving a partnership and ordering an accounting, and from an order confirming the report of a referee, and from a final judgment thereon, and from an order denying a motion for leave to file and serve nunc pro tunc amended and supplemental exceptions (94 N. Y. S. 259), defendants appeal. Modified.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

James A. Allen, for appellants.

Dittenhoefer, Gerber & James (David Gerber, of counsel), for respondents.

CLARKE, J. This action was brought for the dissolution of a partnership and an accounting. The partnership related to the giving of bicycle exhibitions or races. In May, 1897, the plaintiff and the defendants entered into an oral partnership arrangement to give bicycle exhibitions, each of the four parties to receive one-fourth of the profits, and share the losses in the same proportion. At that time the exhibitions contemplated were "outdoor" exhibitions. In August, 1897, it was agreed that the plaintiff should have an interest in indoor racing. Prior to that, Powers, Kennedy, and Batchelder had been holding these indoor races, and the plaintiff asked to be allowed to come in. After some opposition and considerable discussion, it was agreed that Brady, in consideration of his paying $2,000, should have a 25 per cent. interest in indoor bicycle racing at Madison Square Garden. Brady did not pay this money to the partnership, but it was subtracted from his share of the proceeds of the next meet after the agreement. That fact establishes a waiver of any defense which his partners might have had of his claim to an interest in indoor racing on account of his failure to pay this money. Exhibitions were given in Madison Square Garden in 1897 and 1898. Settlements for these years had been had between the parties. No settlement having been had after the exhibitions of 1899 and 1900, this action was commenced on the 18th of January, 1901. The defendants denied the continued existence of the partnership. The learned justice who tried the case said in his opinion on granting the interlocutory judgment:

"The partnership interest of the plaintiff up to a specified time is conceded. The acts of the parties satisfy me that the partnership was not dissolved, but was continued, and is still in existence."

The case having been tried before the amendment to the Code which required separate findings of fact and conclusions of law, we have not had the assistance of such findings, and have been compelled to examine with minute care all of this voluminous record on this appeal; and, having done so, we find the conclusion that the partnership had not been dissolved up to the time of the commencement of the action fully supported by the evidence. As to the existence and continuance of the partnership relation to October, 1900, there is no longer any pretense of dispute. Powers, one of the defendants, testified that the termination of plaintiff's interest was in October, 1900 (the settlement of the Twentieth Century Athletic Club suit), and that he would have no objection to a judgment in favor of the plaintiff, and directing an accounting down to that time. Kennedy, the other defendant, testified that they had a general settlement in October, 1900, and everything ended then; so that there was no question but there was a partnership, created by oral agreement, without time limitation, under which indoor bicycle races were to be conducted at the Madison Square Garden in the city of New York, and that such races were so conducted in the winter of 1897, 1898, and 1899. The defendants claim, however, that before the race meeting in December, 1900, this partnership was terminated and all matters settled in October, 1900. If so, there should be no accounting after 1899. These men were all engaged in many and various ventures, sometimes together and often apart. They were in no sense general partners. They joined in special ventures. The plaintiff in the case at bar had brought suit against the Twentieth Century Athletic Club and Powers and Kennedy, claiming that he was a partner in that enterprise, and by injunction had tied up a considerable amount of money. That venture was for the purpose of giving pugilistic exhibitions, and was in no way connected with bicycling. That suit was discontinued, and plaintiff received $1,058. Defendants claim that the $1,058 represented moneys which plaintiff claimed to be due him growing out of bicycling matters, and that the payment thereof settled all of their affairs and terminated all of their arrangements. No release was executed or delivered; no writing passed. The plaintiff testifies that, for reasons advanced by a friend whose name did not appear in the case, he was induced to settle the Twentieth Century Athletic Club suit, and release the money, but said that defendants ought to pay him back cerain sums he had advanced; that he gave them a paper showing his claims against them. That paper reads:

"Advanced P. T. Powers and J. C. Kennedy $600 to bring bicycle riders here last year. An accounting of last 6-day race which I have never received. $258 adv. Kennedy on his note, which I hold, to send Hawkins to Cala.   $200 advanced Kennedy on his note last May before leaving for Europe."

—But that that settlement was solely in regard to the Twentieth Century Club suit, in no way involved bicycling matters, except as to the sums advanced, and that the paper itself shows he was claiming an accounting of the last six-day race, which he had never received.

There was evidence to sustain and require the Special Term's conclusion that "the settlement pleaded in bar has no bearing on the present issues, but related to transactions entirely foreign to the matters litigated." The testimony of plaintiff and Kennedy is in direct contra-

diction as to the conversation had at the time of settlement, and the witness Sullivan, called by defendants in corroboration, must be dismissed from consideration, as the story told by him is simply impossible, as he narrates a conversation about events which did not occur until over two months after the date of the alleged conversation. In addition, however, the conduct of the parties is utterly at variance with the fact of any such settlement as claimed by the defendants. The defendants furnished the plaintiff statements of box office receipts each night of the meet, and subsequent thereto made statements and appointments in regard to an accounting which are consistent only with a continuance of the partnership. Their testimony upon the stand was so often contradicted by their previous affidavits and by written papers as to leave their evidence unreliable, and to warrant the court which heard and saw them in resolving doubtful questions of fact against them.

The interlocutory judgment declaring a partnership and providing for an accounting was required by the evidence; but I am of the opinion that it went too far. The suit was instituted on the 18th of January, 1901, after the race meet of December, 1900. The interlocutory judgment was not entered until the 25th day of April, 1903. In the meantime the race meets of 1901 and 1902 had been held. The interlocutory judgment provided that the accounting should be had "for the year 1899, and thereafter to the time of the entry of this judgment." The referee, in accordance with the interlocutory judgment, carried the accounting down through the year 1902. I think that the defendants are not liable to account to the plaintiff for the proceeds of the races of 1901 and 1902. At the time of the commencement of this action, the sole business of the partnership consisted in giving a six-day bicycle race in Madison Square Garden once a year. A peculiarity of this partnership is that it had no working capital, it had no particular assets of any kind, save the right to lease Madison Square Garden for a six-day race, which plaintiff testifies was reserved to them by the managers of the garden because they had first conceived the idea of giving these races. In order to effect a dissolution of this partnership at will, there must have been a mutual agreement to dissolve, or there must have been notice by a party desiring a dissolution to his copartners "of his election to terminate the partnership, or his election must be manifested by unequivocal acts or circumstances brought to the knowledge of the other party which signify the will of the former that the partnership be dissolved." Spears v. Willis, 151 N. Y. 449, 45 N. E. 849. Up to the time of the bringing of this action, as the court below found, there had been no agreement to dissolve, and no notice by one of the partners to the others that he exercised his power of dissolving the partnership. The only facts before the court (other than those which preceded the bringing of this action) which have any bearing on the question of the dissolution of the partnership are that plaintiff has brought an action for an accounting, and served his complaint on the defendants, his copartners, and that they have served their answers upon him, in which they deny their liability to account.

It is undoubtedly the rule, as contended by the appellant, that the bringing of an action by one partner against his copartners for an ac-

counting does not necessarily constitute an election on his part to dissolve the partnership (Sanger v. French, 157 N. Y. 234, 51 N. E. 979) ; and I do not consider the bringing of this action an election on the part of the plaintiff to exercise his right to dissolve the partnership, for in his complaint he expressly considers the partnership as existing, and asks that it be dissolved by the court, rather than proclaiming its dissolution by his own act.

There is in the answers of the defendants, Powers and Kennedy, who at the time of the commencement of this action were the only partners of the plaintiff, this statement:

"There is no partnership now existing between the plaintiff herein and the defendants in this action, and that every and all business relations heretofore existing between the plaintiff and these defendants have terminated and ceased to exist, and do not now exist, and have not existed at the commencement of this action."

It seems to me that, although the court specifically found against this contention, which was based on the alleged settlement in October, 1900, nevertheless it spoke as of the time when served, so far as the future relations of these parties were concerned, and that this is an unequivocal notice on the part of the defendants, Powers and Kennedy, that they elect to terminate the partnership. It is true that they do not say in so many words "We elect to terminate the partnership," but there can be no possible doubt of their intention that the partnership be considered dissolved, within the rule of Spears v. Willis, supra.

Respondent contends that, even if the appellants have given sufficient notice to him of their intention to terminate the partnership, yet the partnership does not terminate until the appellants cease to carry on these races; that they can only terminate the partnership with a view to winding up its affairs; that since the defendants, Powers and Kennedy, have continued to give these races in the same place, they have appropriated the good will of the business, "which in and of itself required the wrongdoers to account for the protfis made from that business thus continued." In support of this contention respondent cites Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252, and Struthers v. Pearce, 51 N. Y. 357, where it was held that where, during the existence of a continuing copartnership, one or more of the partners, without the knowledge of the others, obtained a lease in their own name of premises leased and used by the firm, the same becomes partnership property, and upon dissolution it must be treated as a partnership asset, and each partner is entitled to his portion of its value. These cases are not authorities which can govern this case, for the reason that it does not appear that the lease of the garden for the races of 1901 and 1902 were taken by the respondents before the service of their answers in this case which terminated the partnership. From all that appears, a lease was never taken for a longer period than the time of the annual race, and the lease was renewed each year. Again, the cases are only authority for the point that the offending partners are liable to account for the value of the new lease, and not that they are liable to account to the other partners for a proportionate share of the profits of the business, the same as if the partnership had not been dissolved. Respondent cites, also, the case of Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61

L. R. A. 796, 96 Am. St. Rep. 605, which holds that, where a partnership has been dissolved by the death of one of its members, the firm name and good will are assets of the partnership, which must be accounted for to the representative of the deceased partner. That case is only an authority for the point that firm name and good will are partnership assets; not for respondent's main proposition.

Respondent claims that, since appellants have retained the proceeds of the race of 1900, and whatever profits were made in 1901 and 1902 were made out of the cash assets of the partnership so retained, he is entitled to his share of the proceeds of the investment of those assets. This would be true if it had been shown that appellants did in fact use the proceeds of the race of 1900 to carry on the races of 1901 and 1902, but this nowhere appears, and therefore respondent's claim fails, as the cases cited by him show. It does not appear that there was ever any amount carried over upon which, as capital, the business of the next meet was started. Privileges of various kinds were sold, and from the moneys thus received and on the credit of the enterprise the preliminary arrangements were met; the box receipts being the source to which all looked for compensation. The business being of this ephemeral character, no capital being embarked or employed, it seems to me that upon no principle of equity can the plaintiff rightly share in the profits of the two years in which he confessedly took no part in the business, in which the only money of his which by any hypothesis could be considered as embarked in the transaction was the unascertained share of the profits theretofore made, and after his complaint he had asked a dissolution, and by the answer the defendants had notified him of a dissolution on their part of this partnership at will.

It seems to me, therefore, that the interlocutory judgment should be modified by striking out the provisions for an accounting, "and thereafter to the time of the entry of this judgment," and inserting in lieu thereof, after the words "for the year 1899," the words "and 1900," and that the order confirming the referee's report and the final judgment should be modified by confining the same to a confirmation of the report so far as it states the account for the years 1899 and 1900, and that judgment be directed in favor of the plaintiff for $1,220.38 for 1899 and $4,864.97 for 1900, with interest thereon, and, as so modified, affirmed, without costs to any party. All concur.