## Davis *versus* Steiner.

1. On a demurrer to evidence, the party demurring admits all the facts which the evidence tends or conduces to prove in the slightest degree, or which the jury might, with the least degree of propriety, have inferred from it; and no testimony can be considered, which impugns its truth.

2. To take a case out of the statute of limitations, the acknowledgment need not refer to the *amount of the debt*. It is necessary, however, that there be no uncertainty in the acknowledgment, as to the debt referred to.

ERROR to the Common Pleas of *Westmoreland county*.

This was an action on the case by David Davis *vs.* Steiner, executor of Philip Kuhns, deceased. Summons issued 22d Jan. 1848.

The plaintiff claimed in this case to recover on the grounds—that, on the 5th March, 1819, he sold, by articles of agreement, a tract of land to Jacob Dry, for $2530, and received on it the hand-money—one thousand dollars. About the time of the sale, judgments were entered against David Davis, the plaintiff, for about six hundred dollars. On one of the judgments execution issued, and David Davis's interest in the land levied on; and before the sheriff's sale, plaintiff alleges an arrangement was made between him, Jacob Dry the purchaser, and Philip Kuhns the defendant's testate, his brother-in-law, that Kuhns was to bid off the land at sheriff's sale, and take a deed in his own name; that he was to pay the judgments against Davis, and was to receive from Dry the balance of the purchase money on his contract with Davis, and make Dry a deed, in pursuance of the contract between Davis and Dry, and after being reimbursed the money he paid, was to pay the residue to Davis. In pursuance of this arrangement, all the payments coming due on the article, after the sheriff's sale, were made to Kuhns by Dry, the last of which was due in 1827, when Kuhns made a deed to Dry. This suit was brought on the 22d Jan. 1848, to recover the amount Kuhns received from Dry, over what he paid to the sheriff. The property of Davis was sold on *venditioni exponas*, in Nov. 1819, to Kuhns, for $1050.

[Davis *v.* Steiner.]

The question decided by the court was, that the evidence did not show such an acknowledgment of the debt within six years, as took the case out of the operation of the statute of limitations; and on *demurrer to the evidence,* the court entered judgment for the *defendant.*

The evidence which is referred to in the opinion of his Honor Judge ROGERS, relative to the acknowledgment, was as follows:

*Joseph Davis, sworn.*—My father sent me in from Mercer county, to ask Kuhns for money that he claimed. This was in 1844. He said he had no money, and could not make any money. I said I would take a good horse. He said he could not spare any; said he must do for his own children, before he could do any thing for my father. This was about the amount that passed between us— I talking to him about the money that my father claimed on the Dry farm.

*John W. Davis, sworn.*—I used to live in Philip Kuhns' neighborhood. In 1844, I was on my road to Grapeville—*caught up* with Philip Kuhns. He said he owed David Davis some money, and his son was in after it, and he was coming on to Greensburgh to make arrangements to pay the money.

BLACK, J., *inter alia,* in his opinion stated—But surely it does not follow from this, that a right of action on a contract, obscure at first, and which has slept for more than a quarter of a century, can be relieved by a vague and indefinite admission of indebtedness in a loose conversation, which contains not the remotest allusion to the matter on which the suit is based. The defendant's testator said he owed Davis some money. Does this amount to an acknowledgment that he owed the sum claimed in the present action? He did not speak of nor refer to any thing as the origin or consideration of the debt. Would any jury be allowed to infer from his silence, that he meant to admit the justice of the claim now set up? My opinion is in the negative, and judgment therefore to be entered for the defendant.

It was assigned for error, that the court erred in entering judgment for the defendant on the demurrer.

The case was argued by *Foster,* for plaintiff in error.—Reference to 6 *W. & Ser.* 213; 4 *Barr* 321; Hazelberger *v.* Reeves, not yet reported; Reader *v.* Grim, *Law Journal,* August, 1850, p. 65.

*Cowan,* for defendant, the executor.—10 *Watts* 120; 6 *id.* 220; and the cases cited on the part of plaintiff in error.

The opinion of the court was delivered, Oct. 18th, by

ROGERS, J.—On a demurrer to evidence, the party demurring admits all the facts which the evidence tends or conduces to prove,

[Davis *v.* Steiner.]

though but in the slightest degree or which the jury might, with the least degree of propriety, have inferred from it. Every fact is taken against the party demurring as true, and no testimony can be considered which impugns its truth : Fry *v.* Decamp, 15 *Ser. & R.* 231; Crawford *v.* Jackson, 1 *Rawle* 431; McKinley *v.* McGregor, 3 *Whar.* 376 ; Duerhagen *v.* United States, 2 *Ser. & R.* 185. The court is not by the demurrer substituted for the jury, whose duty it is to weigh the testimony, but the case must be ruled on the evidence adduced, in strict subordination to the rules stated.

The evidence proves, or, which is the same thing, tends or conduces to prove this state of facts. On the 5th March, 1819, plaintiff sold, by articles of agreement, a tract of land to Jacob Dry, for $2500, and received $1000 in part payment of the purchase money. About the time of sale, judgments were entered against the vendor the plaintiff, for about $600. On one of the judgments, execution issued, and the vendor's interest in the land was levied on. After the first contract, but before the sheriff's sale, an agreement was entered into between plaintiff, Philip Kuhns defendant's testate, who was his brother-in-law, and the purchaser Jacob Dry. Kuhns was to bid off the land, at the sheriff's sale, and take a deed in his own name. He was to pay the judgment against Davis, and to receive from Dry the unpaid purchase money as it became due, and to make Dry a deed, in pursuance of the original contract. After being reimbursed the money advanced, it was agreed that the residue should be paid by Kuhns to Davis. In pursuance of the contract, the money remaining due was regularly paid to Kuhns, the last payment in 1827, when Kuhns executed a deed to Dry. The suit was brought on the 22d January, 1848, to recover the amount which Kuhns received over what he paid to the sheriff. Jacob Dry, one of the contracting parties, whose testimony, as we have seen, must be taken to be true, furnishes abundant proof of the contract as above stated ; at least, it cannot with any plausibility be denied, that it tends or conduces to prove it ; nor can it be alleged there would have been the least degree of impropriety in the jury inferring the contract from his evidence alone. His statement derives strength from the relationship between the parties, and, in addition, it is corroborated by repeated confessions of Kuhns, as detailed in the evidence of all the other witnesses who were examined.

From the whole testimony, the result is plain, that the jury not only might, but were bound to believe there was a contract between the parties, such as is alleged by the plaintiff. It must be remarked that it is not pretended by the defendant that he performed the contract, by the payment of a single dollar to Davis, although he concedes he received all the purchase money, and does not deny that he only paid, at the sheriff's sale, $1050. Conceding these facts, the amount of the indebtedness may be readily ascertained.

Y

[Davis *v.* Steiner.]

It clearly is the difference between the amount received from Dry, and the money paid at the sheriff's sale, with interest to be calculated according to the contract. This is plain, but some difficulty has arisen as to the money for which Davis gave his receipt to the sheriff. The plaintiff alleges he never received any money whatever, except the $1000 which was first paid; that the whole was received by Kuhns; that he receipted the docket, as it is expressed, merely for the purpose of enabling Kuhns to make a deed. If that be so, then Kuhns only paid for Davis the amount of the judgment, for which alone is he entitled to credit. This, however, we do not undertake to decide, as the whole matter of indebtedness will be investigated before the inquest, to which it is our purpose to refer it.

But, admitting the contract, the defendants contend they are not liable, because there was no consideration; and that the action is barred by the statute of limitations.

As to the question of consideration, Dry testifies that he intended, but for the contract, to purchase the property at the sheriff's sale. If so, he would have been bound to perform his contract with Davis, by payment of the purchase money. It was, therefore, depriving Davis of an advantage which he would otherwise have had, which is a sufficient consideration to support a contract. Any advantage to one, or detriment to the other, however small, as has been repeatedly held, is a sufficient consideration to support a promise.

Next, as to the statute of limitations. This mainly depends on the testimony of John and Joseph Davis. Joseph Davis testifies in this wise: "My father sent me in from Mercer county to ask Kuhns for money that he claimed. This was in 1844. He said he had no money, and could not make any money. I said I would take a good horse. He said he could not spare any; said he must do for his own children before he could do any thing for my father." The witness further said, "I was talking to him about the money my father claimed on the Dry farm." It must be remarked, that the claim is not made as a favor, but as a debt, to which his father was justly entitled, for that is the fair import of the testimony; and yet the defendant's testate does not venture to deny the claim, but alleges, as an excuse for not paying, that he had no money, nor horse to spare; that he must do for his own children before he could do any thing for the father of the witness. Although this would raise a suspicion in the minds of a jury that a debt was due, which he was ashamed to deny, yet I acknowledge the case could not be safely rested on this testimony alone. The acknowledgment is not so clear and unequivocal as the law requires; but in connection with the testimony of John W. Davis, but little doubt can rest upon it. He proves a clear, distinct, unqualified acknowledgment of the debt. He says: "I used to live in the neighborhood of Philip Kuhns. In 1844, I was on the road to Grapeville; caught up with Philip Kuhns. He said he owed David Davis some

[*Davis v. Steiner.*]

money, and his son was in after it, and he was coming to Greensburgh to make arrangements to pay the money." If this was not an unequivocal acknowledgment of a debt, there is no force in language ; and that it was the money claimed on the Dry farm, now in dispute, explicitly appears from the testimony of Joseph Davis, who says they were talking about the money claimed on the Dry farm. In truth, it must have referred to that debt, as, so far as appears, there was no other pecuniary transactions between them, much less was there any other demand by Davis against Kuhns : nor was it likely there should have been, as Kuhns was sick, and Davis thriftless and poor. The testimony, it must be recollected, must be taken as true ; so that all that remains is to ascertain the amount due, which may readily be done from other testimony, which has been already adverted to. There is, therefore, nothing in the plea of the statute ; for whatever opinions may have been erroneously entertained heretofore, it is now settled that, to take a case out of the statute of limitations, it is not necessary the acknowledgment should refer to the amount of the debt. It is only necessary there should be no uncertainty in the acknowledgment as to the debt referred to. This is ruled in Hazelberger *v.* Reeves, and Reader *v.* Grim, not yet reported.

Judgment reversed, and judgment for plaintiff. Writ of inquiry of damages awarded, and record remitted.