[Civil No. 3132.    Filed April 9, 1932.]

[10 Pac. (2d) 367.]

ALBERT STEINFELD, Appellant, v. DELLA G. MARTENY, Executrix of the Last Will and Testament of WM. M. MARTENY, Deceased, Appellee.

Mr. Francis M. Hartman, for Appellant.

Messrs. Conner & Jones, for Appellee.

ROSS, J.—On September 8, 1923, William M. Marteny gave his note for $6,277.69, payable 180 days after date, to the Tucson Cattle Loan Company, hereinafter referred to as the loan company. Marteny died on February 14, 1930, and the defendant was appointed the executrix of his estate on March 15, 1930.

According to the complaint, filed June 27, 1930, the plaintiff, Albert Steinfeld, acquired the note on April 23, 1930, and on that date presented the same to the defendant as executrix for allowance, who on May 2d rejected it as a claim against the estate. Defendant in her answer denied owing anything on the note and pleaded the six-year statute of limitations (section 2062, Revised Code of 1928) as a bar to the action. From the due date of the note, March 6, 1924, to the date the claim was filed with the executrix, excluding the time during which the running of the statute was suspended (section 2067, Id.), the lapse of time is more than six years, and unless the decedent in some way had tolled the statute, it is clear plaintiff's remedy was barred when the claim was presented to the executrix and when suit was commenced.

In his original complaint the plaintiff sets out three reasons why the statute had not run: (1) That the note sued on was a renewal note and that in consid-

eration of such renewal the decedent had agreed in said note to waive the statute of limitations; (2) that the loan company, on March 6, 1924, extended the time of payment for a period of six months from that date; and (3) that the Anglo & London Paris National Bank, hereinafter referred to as the Anglo Bank, to which the note had been assigned by the loan company as collateral, had on December 4, 1924, extended the time of payment until December 4, 1925.

On February 20, 1930, plaintiff filed an amended complaint in which the second of the above-named reasons was omitted and the consideration for the waiver of the statute of limitations was alleged to be the acceptance of the note sued on without the signature of the maker's wife, who was a comaker on the note of which it was a renewal. And as to the third reason, instead of alleging an agreement by the Anglo Bank to extend the time, it is alleged that the Anglo Bank renewed the loan company's note to it from time to time and thereby automatically extended the time of payment of the collateral note.

On April 21, 1931, plaintiff filed a supplemental amendment to his amended complaint reasserting the second reason of his original complaint, that is, that on March 6, 1924, the loan company extended the time of payment 180 days; also alleging that the maker of the note, on March 6, 1924, in consideration of the extension of the time of payment of note, in a signed writing acknowledged to the loan company the justness of its claim on the note and the debt represented thereby, agreed to pay the same and waived the statute of limitations; that on May 16, July 22, and August 8, 1924, November 27, and December 26, 1925, and January 2, and May 7, 1926, he in writing acknowledged the justness of the debt and agreed to pay the same.

At the close of plaintiff's case, both parties made a motion for an instructed verdict. That of defendant

was granted on the ground as we understand, of a failure on the part of the plaintiff to establish by competent evidence that defendant had, subsequent to the time the note became due and within six years before the presentation of the claim for allowance, acknowledged in writing its justness.

Before taking up plaintiff's assignments, there are some two or three points he makes that we will first dispose of. We are asked to hold that the stipulation in the note undertaking to waive the statute of limitations is valid and binding. Counsel recognizes that we have held to the contrary in *Forbach* v. *Steinfeld,* 34 Ariz. 519, 273 Pac. 6, but he says the note in that case was not a renewal. We think whether it is a renewal or not "the moral duress" is much the same and being against public policy is void. Where a renewal is granted on condition that the maker waive the statute of limitations, it seems to us the coercion is just as great as it would be to exact such a waiver upon making an original loan.

Nor are we able to understand why, as contended by appellant, the periodic renewal of the loan company's note by the Anglo Bank automatically extended the time of payment of the note sued on. The parties to the two notes are not the same, nor are their relations such that an agreement between the loan company and the Anglo Bank renewing the former's note would change or affect the terms of the collateral note without the consent of the maker.

We think the court was right in its ruling disallowing plaintiff's offer of proof to the effect that defendant's testate had been given an oral extension of 180 days from March 6, 1924, in which to make payment. The defendant objected to this testimony on the ground that, the maker of the note being dead, such testimony was incompetent to prove any transaction with or statement by him, unless the party offering it had been called to testify by the opposing party or

required to testify by the court as provided in section 4414 of the Revised Code of 1928. This objection was sustained and, since it was a matter within the court's discretion (*Goldman* v. *Sotelo,* 7 Ariz. 23, 60 Pac. 696; *Johnson* v. *Moilanen,* 23 Ariz. 86, 201 Pac. 634), it eliminates from consideration any contention of an oral extension.

Most of appellant's assignments are directed to the court's rulings on the admission and rejection of testimony offered by him to prove that when the note became due, on March 6, 1924, a written agreement was entered into between the loan company and Marteny extending the time in which to make payment thereof. The court in effect held that there was no competent evidence introduced or offered of such an agreement and, without going into these assignments in detail, will say we agree with the court's rulings thereon. The testimony on that issue was very unsatisfactory, to say the least. It appeared that if there ever was such an agreement it could not be found and no witness positively stated that there was such an agreement. It was testified to on recollection and the best of recollection only. There was disagreement among the witnesses as to what the writing, if there were one, was. The three officers of the loan company— the plaintiff, who was its president, Charles E. Walker, who was its vice-president and director, and P. M. Clark, who was its vice-president, director, and general manager, actively in charge of its business— were asked concerning such extension and the paper that evidenced it. Walker stated that according to his recollection it was a formal agreement of extension and a waiver of the statute of limitations signed by Marteny. The plaintiff stated it was a waiver of the statute of limitations, or a letter to Marteny by the loan company, or a letter by Marteny to the loan company. And Clark, who knew nothing of any agreement of the kind, said that the note "was just

carried along.'' The ledger in which was kept the note account of Marteny with the loan company contained no entry of any extension of the time of payment from March 6, 1924. It would seem if there had been any such agreement it would have been reflected on the loan company's books. This company was a subsidiary of the Consolidated National Bank of Tucson, and from the evidence was doing thousands of dollars of business in the way of loans, especially to cattlemen in that part of Arizona, and it seems improbable an extension would have been made without noting it on the books of the loan company. As to whether there was such an agreement plaintiff himself must have entertained some doubt, for in his amended complaint he omits all reference to it. Seven years is a long time for the officers to remember with any certainty what agreements were made concerning this particular note. This much they did doubtless know: That the note contained a form stipulation waiving the statute of limitations. The validity of such a stipulation had not been passed upon by the courts of the state at the time the note became due and there was no reason why the officers of the loan company should ask for any other extension. Possibly it was this stipulation the witnesses had in mind, for if valid it would have had the effect of extending payment and also tolling the statute indefinitely.

When there was so much doubt of the existence of the alleged writing, we think the court was right in rejecting proof of its contents as a lost or destroyed instrument and in striking all the evidence concerning it.

On the question of the acknowledgment of the justness of the debt by Marteny, there were in evidence, when the motion for an instructed verdict was made, several letters written and signed by Marteny to the

loan company in which he asked generally for leniency or expressed the hope that he would be able from cattle sales and the sale of his ranches, if necessary, to reduce or pay off what he owed. These letters extended over the period from May 16, 1924, to May 7, 1926. In a financial statement to the loan company dated August 8, 1924, in his handwriting and signed by him, listing his assets and liabilities, was an item of $38,410 owing to the loan company. To show that the note in question was included in said indebtedness, the plaintiff was permitted to introduce the loan company's ledger account with Marteny as of August 6, 1924. This account showed that the loan company held seven notes of Marteny, one of which was the note herein involved and that the amount due the loan company, after allowing credits, was the sum of $34,454.67. In other words, the loan company's account of August 6th was some $4,000 less than Marteny charged himself with in his financial statement of August 8th. This discrepancy could be accounted for on the ground that Marteny's figures were an estimate, whereas the loan company's were taken from the books of account. Our attention is directed to some unexplained figures on the financial statement, admittedly placed there by Clark and Marteny some time after the statement was rendered to the loan company. These figures may have reflected the state of the account between the loan company and Marteny at the time they were placed thereon, but whether they do or not, or when they were placed there, we are not advised. Witnesses stated, and they are not contradicted, that on August 8th, the date the financial statement was rendered, this note was not paid.

The question is as to whether this evidence shows such an acknowledgment of the justness of the debt evidenced by the note as is contemplated by the stat-

ute to stop and restart its running. The pertinent statute, section 2068, Revised Code of 1928, reads as follows:

"When an action is barred by limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of·the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

The above provision recognizes that the bar of the statute may be waived or suspended by the debtor and prescribes just how this may be done. Before this enactment, it could be done by an oral acknowledgment of the debt, or it might be done by partial payments on the debt. Now, the exclusive method is by a signed written acknowledgment of the justness of the claim, made subsequent to the accrual of the right of action, and either before or after the bar. It is well settled that the acknowledgment may be by signed letters or by other signed documents, but what the writing is called is not so material as that it shall definitely and certainly designate the particular subject or demand to which it refers. A general acknowledgment of indebtedness, without specifying the extent or nature thereof, is insufficient. *Conway* v. *Williams,* 10 La. 568, 29 Am. Dec. 466. Loose and general expressions, which are merely casual, respecting acknowledgment of a debt, are insufficient. *Thomas* v. *Carey,* 26 Colo. 485, 58 Pac. 1093. There must be no uncertainty as to the debt referred to. *Davis* v. *Steiner,* 14 Pa. 275, 53 Am. Dec. 547. The acknowledgment must identify the debt explicitly and certainly. *Landis* v. *Roth,* 109 Pa. 621, 58 Am. Rep. 747, 1 Atl. 49; *Martin* v. *Broach,* 6 Ga. 21, 50 Am. Dec. 306; 37 C. J. 1099, § 570; 17 R. C. L. 901, § 259.

The above section of our statute (section 2068) was taken from Texas. *Work* v. *United Globe Mines,* 12 Ariz. 339, 100 Pac. 813. They are practically the

same in wording and mean exactly the same thing. Article 5705, Vernon's Sayles' Tex. Civ. Stats. 1914 (vol. 4). In *Coles* v. *Kelsey*, 2 Tex. 541, 47 Am. Dec. 661, it was said:

"That there must be an acknowledgment of the debt existing, and an expression of a willingness to pay it; both must concur; an acknowledgment of the debt is not sufficient; but there must be an expression of a willingness to pay."

This seems to be the rule in other jurisdictions. *Warren* v. *Cleveland*, 111 Tenn. 174, 76 S. W. 910, 102 Am. St. Rep. 749, and note g, subd. 2, at page 766; 17 R. C. L. 900, § 258.

It would seem that these two things would have to concur in order to meet the requirement of the statute that the acknowledgment should be "of the jusness of the claim."

None of the letters introduced specifically referred to the note sued on. They were general admissions and acknowledgments of a subsisting indebtedness between the writer and the loan company, and under the rule above stated were too general and loose to be regarded as an acknowledgment of the justness of the particular note. The only evidence introduced that may be said to acknowledge this note is the financial statement made to the loan company on August 8, 1924. The purpose of such statements, as it is well known, is ordinarily to obtain credit, and generally the figures given are merely estimates of the liabilities and assets of the person making the statement. In listing his debts for that purpose it could hardly be said that he admitted the justness of each and every item of such indebtedness or a willingness to pay the whole thereof. If Marteny may be said to have included the note in the item of $38,410 which he admitted owing the loan company, he did not thereby admit a willingness to pay the same.

There is no conflict in the testimony on this issue. The evidence consisting, as it does, of the letters and the financial statement by Marteny and the note account of the loan company, the question of law is as to whether these taken all together amounted to the acknowledgment provided by section 2068, *supra*, to take the indebtedness out of the operation of the statute. Where the evidence on that point is in writing, as here, we think it is the duty of the court to determine the question rather than to submit it to the jury. This was the holding in *Wooster* v. *Scorse,* 16 Ariz. 11, 140 Pac. 819. If the evidence on that point were in conflict, or if from it there could reasonably be drawn different inferences, we think it would have been a matter for the jury; but such was not the case.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.