[Civil No. 1299.    Filed February 13, 1914.]

[138 Pac. 544.]

MARY M. COSTELLO, as Executrix of the Last Will and Testament of MARTIN COSTELLO, Deceased, Appellant, v. JOHN GLEESON, Appellee.

1. PARTNERSHIP—SUIT FOR ACCOUNTING—RIGHT OF ACTION.—Under Civil Code of 1901, paragraph 1829, providing that, when a partnership exists between a decedent at the time of his death and any other person, the surviving partner has a right to continue in possession of the partnership and settle its business, and that he must settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balances as may

from time to time be payable to him in right of the decedent, where defendant's testator prior to his death repudiated and denied an alleged partnership, thereby dissolving it, plaintiff could sue for an accounting as an individual partner rather than as surviving partner in behalf of the partnership, since, as no partnership existed at the time of testator's death, plaintiff did not, under the statute, have the right to continue in possession and settle the partnership affairs.

2. PARTNERSHIP—DISSOLUTION OF "PARTNERSHIP AT WILL."—A partnership having no fixed time for its continuance is a "partnership at will," and can be terminated at any time by any of the partners.

3. PARTNERSHIP—DISSOLUTION OF PARTNERSHIP AT WILL.—A partnership at will was dissolved by one partner's repudiation and denial of the partnership.

4. PARTNERSHIP—DISSOLUTION OF PARTNERSHIP AT WILL.—Where, in a suit for dissolution of an alleged partnership at will and an accounting, defendant served an answer denying the partnership, the partnership, if not theretofore dissolved, was terminated by such repudiation from the date of service of the answer.

5. PARTIES—BRINGING IN NEW PARTIES ON COURT'S MOTION.—Under Civil Code of 1901, paragraph 1345, providing that the court may determine any controversy between the parties before it when it can be done without prejudice to the rights of others or by saving their rights, but that, when a complete determination of the controversy cannot be had without the presence of other parties, the court shall order them brought in, in an action for dissolution of a partnership and an accounting, where the personal representative of a third alleged partner is not made a party, and the defect of parties is not raised by demurrer or answer, it is the court's duty of its own motion to order him brought in, if his presence is necessary to a just and full determination of the matter in litigation.

[As to causes sufficient for dissolution of partnership, see note in 69 Am. St. Rep. 410. As to rights, remedies and liabilities of partners after dissolution, see note in 40 Am. St. Rep. 561.]

6. WITNESSES—COMPETENCY—DISCRETION OF COURT.—Under Civil Code of 1901, paragraph 2536, providing that in an action by or against executors, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with or statement by the testator, unless called to testify thereto by the opposite party, or required to testify thereto by the court, discretionary power is conferred on the trial court to determine the competency of parties as witnesses in the cases mentioned; and hence where the court, in the exercise of its discretion, overruled an objection to a party's competency, thereby in effect "requiring" him to testify, the admission of his testimony was not error.

7. WITNESSES—IMPEACHMENT OF WITNESS BY PARTY CALLING.—On the second trial of an action against an executrix, where plaintiff introduced the testimony of defendant's testator given on the first trial, not to support his view of the case, but to lay a foundation for the introduction of his own testimony, under Civil Code of 1901, paragraph 2536, authorizing the court in actions by or against executors to require either party to testify to transactions with or statements by the testator, and the court admitted plaintiff's testimony on the sole ground that the testator's testimony was in evidence, the admission of plaintiff's testimony was not erroneous on the theory that he was thereby permitted to contradict his own witness, whose testimony could not have surprised or misled him.

[As to impeachment of witness by party who called him, see note in 60 Am. Dec. 749.]

8. APPEAL AND ERROR—REVIEW—QUESTIONS PRELIMINARY TO ADMISSION OF EVIDENCE.—In an action for dissolution of an alleged partnership and an accounting, where defendant testified that he paid for a map of the mines claimed to be partnership property, and that R., a third alleged partner, ordered it, and a map of such mines, bearing the designation "The C. Copper Company," which was the name of a corporation formed by the alleged partners, and offered in evidence as an admission against interest, was shown to have been made upon the order of R., who directed the placing thereon of such designation, and to have been hung on the wall of R.'s office, where defendant was almost a daily visitor, in plain view from where he usually sat, and it did not appear that more than one map of the mines was made for defendant, the court's ruling in admitting the map would not be disturbed, though defendant claimed that the map offered was not the one for which he paid.

9. TRIAL—SPECIAL FINDINGS—DUTY TO REQUIRE—EQUITABLE ACTIONS.— In an action for a partnership accounting involving a large number of items, where the submission of special interrogatories was requested, the court should have submitted for determination of the jury such issues of fact as the nature of the case demanded, instead of permitting them to return a general verdict, whether or not a trial by jury was given by statute, as a matter of right, since it is the peculiar province of the jury in equity cases to pass on issues of fact, and the court, to the facts so found, applies the law and renders judgment, and there is no statutory provision indicating an intention to deviate from this established practice.

APPEAL from a judgment of the Superior Court of the County of Cochise. J. E. O'Connor, Judge. Reversed.

The facts are stated in the opinion.

Mr. Joseph Scott, Mr. Ben Goodrich, Messrs. Ellinwood & Ross, Messrs. Williams & Flannigan and Mr. Lee O. Woolery, for Appellant.

Mr. Eugene S. Ives, for Appellee.

McALISTER, J.—This is an equitable action, prosecuted by John Gleeson, appellee, against Mary M. Costello, as executrix of the last will and testament of Martin Costello, deceased, appellant, praying for the dissolution of an alleged partnership, for an accounting, and for an order directing a conveyance to John Gleeson by the said executrix of an undivided one-third interest in the mining claims described in the second amended complaint and alleged to belong to the partnership. From a judgment for plaintiff and an order denying defendant's motion for a new trial, this appeal is taken.

The record in this case is voluminous. However, a statement of the essential allegations of the second amended complaint and answer, supplemented by a recital, under each assignment of error discussed, of the facts relevant thereto will disclose the issues on the merits of which the appeal must be determined. Appellee alleges that in December, 1901, he was the owner of an option to purchase from one Patrick Power, within 18 months from May 1, 1901, for $20,000, three patented mining claims, located in the Turquoise mining district, in Cochise county, Arizona, and known as the San Francisco, Fennard and Batavia, which option was of the value of $20,000 over and above the purchase price to be paid said Power; and that Martin Costello and one James Reilly were the owners of a certain mining claim known as the Mono, located contiguous to the above-named three mining claims, which was of the value of $20,000; that in December, 1901, said John Gleeson, Martin Costello, and James Reilly entered into a copartnership agreement having for its object the owning, working, developing and dealing in mines and mining claims, whereby Gleeson contributed said Power option, and Costello and Reilly the said Mono mining claim to form the assets of said partnership, but, in order that the contributions of the three partners might be equal, it was agreed that Costello and Reilly would pay to Patrick Power the purchase

price of the said option; that on July 1, 1902, the partnership abandoned the said Power option in order that a new one might be procured at a later date on more favorable terms, whereupon a second option, covering the same claims, was obtained on June 6, 1903, on the same terms as the first one, except that it recited the payment thereon of $1,250, which included $750 paid by Gleeson on the first option, which said second option was taken in the name of Martin Costello, to be held in trust for the partnership, and was thereafter, to wit, on November 4, 1904, exercised, when a deed to the claims covered by it was made and delivered to Martin Costello for the use and benefit of the partnership; that on February 4, 1902, the partners decided to extend the scope of the partnership by purchasing other mines and mining claims in said district, and, in pursuance of said policy the partnership did acquire thereafter in said district about 30 mines and mining claims, for which it expended $79,652.50 in purchase price, about $7,000 in securing patents, and about $8,000 for work, expenses and taxes thereon; that, on the day it was agreed to extend the scope of the partnership, Martin Costello had in cash over $300,000, and was indebted to said James Reilly in the sum of $90,000, and the appellee was the owner of four promissory notes of the Copper Belle Mining Company aggregating $53,000, the said notes being secured by a mortgage on the mines and mining claims of the said Copper Belle Company; that thereafter, to wit, on July 31, 1902, appellee sold and transferred to Martin Costello the said Copper Belle notes and mortgage, and received in payment therefor from Costello, on January 8, 1903, with other consideration, $25,000, which said $25,000 was repaid to Costello, through said James Reilly, within a few days thereafter, to wit, January 26, 1903, as appellee's contribution to the said partnership in its extended scope; that Gleeson, because of his experience as a practical mining man in the Turquoise mining district, should have charge of the selecting, buying and working of said mines, for which service he was to receive $250 per month, and, in addition thereto, $60 per month for the use of his wagon and teams; that the partnership received in cash from two options given on certain of said mining claims $107,000; that said Martin Costello first repudiated the partnership as to certain of said claims in the early part

of September, 1908, but within two weeks before the commencement of this action denied its existence as to all of said claims, when an accounting was demanded by appellee and by Costello refused; that the interest of said James Reilly in said partnership was acquired by said Martin Costello before this suit was filed, and that the same is now claimed and held by said appellant; that, in addition to the $15,750 for wages and $3,780 for wagons and teams, the appellant is indebted to appellee in the sum of $6,525, which appellee was compelled to pay because said Costello refused to carry out an option on certain of said claims which appellee had negotiated to L. W. Powell for the Calumet and Arizona Mining Company.

A demurrer to the second amended complaint being overruled, the appellant answered, denying specifically, upon information and belief, every substantial averment contained therein, and alleged, among other things, that said Martin Costello, in December, 1901, and up to the time of his death, was the sole owner of the Mono claim, the said James Reilly never having owned or claimed any interest therein; that the Power option owned by appellee in December, 1901, was forfeited by him by failure to comply with its terms, and that Costello did afterward take an option on and purchase from Patrick Power the mines and mining claims covered by said first option with his own funds and for his own use and benefit, and that all the claims described in the second amended complaint as having been acquired by the partnership were purchased by Costello for his own use, paid for out of his own funds, and deeds thereto taken in his own name; that the $107,000 alleged to have been received by the partnership from the two options given on certain of said claims was, in fact, received by Martin Costello, but for his own use and benefit, and was at no time the property of the alleged partnership, the existence of which Costello at all times repudiated and denied; that the organization on August 4, 1903, of the Costello Copper Company, as a corporation, by Costello, Reilly and Gleeson, for the purpose of purchasing a portion of the mines mentioned in the second amended complaint, which said corporation was abandoned without the transaction of any business, was the only dealing had by the said parties relating to the matters contained in the said complaint; that Costello

did employ personally said appellee to look after the assessment work on his mines and mining claims, but that he was paid in full for said services; that his right of action, if any ever existed, having accrued in 1906, appellee is guilty of laches for having delayed the filing of this suit until after the death of said James Reilly in June, 1909, who was alleged to have been a member of the said partnership and who would have testified, had he been alive, that no such partnership agreement ever existed.

The case was tried with the aid of a jury, which returned a verdict, signed by ten jurors, in favor of appellee. Judgment was thereupon entered in accordance with the verdict, decreeing appellee to be the owner and entitled to the possession of an undivided one-third interest in the mines and mining claims described in the second amended complaint, and that he recover of appellant, as executrix, the sum of $4,362.24 and costs. Numerous errors are assigned, but in appellant's brief they have been grouped for argument under eleven separate propositions which, in reviewing, we do not. follow consecutively.

We consider first the contention that appellee has mistaken his remedy. It is urged that a suit in equity by an individual partner for an accounting and settlement of partnership affairs cannot be maintained by a surviving partner who, upon the dissolution of the partnership by death, is given ample authority under the statute to take possession of the partnership property and settle its affairs. This contention is based on the provisions of paragraph 1829 of the Revised Statutes of 1901, the relevant parts of which read: "When a partnership exists between the decedent, at the time of his death, and any other person, the surviving partner has the right to continue in possession of the partnership and settle its business, but the interest of the decedent in the partnership must be included in the inventory, and be appraised and appropriated as other property. The surviving partner must settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balances as may from time to time be payable to him in right of the decedent." If the alleged partnership was dissolved by Costello's death, appellant's contention is sound, for appellee then became the surviving partner, with his rights and duties

fixed by this statute; but, if dissolution had been effected previous to that time, no partnership then existed between appellee and Martin Costello, and the statute would not apply. An examination of the second amended complaint discloses these facts: That the partnership, at the time of its formation, consisted of three persons, John Gleeson, Martin Costello and James Reilly, and that some years subsequent thereto Costello acquired from Reilly his interest therein; that Costello, who at all times had actual possession of the entire assets of the partnership, and in whose name the title to the mines and mining claims described in the complaint stood, denied and repudiated said partnership on two separate occasions previous to his death, which occurred in September, 1911. It also appears from the original complaint that the party defendant at the time of the institution of this suit was Martin Costello, whose verified answer denied the existence of any partnership whatever with himself, appellee, and James Reilly, or any two of them, as its members. The partnership shown by appellee's pleadings is what the law terms a partnership at will, no time having been fixed for its continuance. Partnerships of this character can be terminated at any time by any of the partners. It follows, therefore, that Costello's repudiation and denial of the partnership worked its dissolution. But, even if it had not been repudiated previous to the filing of the complaint asking for the dissolution and accounting, Costello's answer thereto denying the partnership would have effected the termination thereof from and after the date said answer was served on appellee. *Brady* v. *Powers,* 112 App. Div. 845, 98 N. Y. Supp. 237. It appearing, therefore, that no "partnership existed between appellee and Martin Costello at the time of the latter's death," Gleeson did not then "have the right to continue in possession of the partnership and settle its affairs." His suit as an individual partner, rather than as surviving partner in behalf of the partnership, is properly brought.

Appellant contends that the trial court was without jurisdiction to determine this action, because the personal representative of James Reilly, deceased, was not a party thereto. This objection was not raised in the trial court, but is urged for the first time on appeal. Inasmuch as the case must be reversed on another ground, it is only necessary to say that,

upon a retrial, if Reilly's representative should not be made a party by appellee, a defect of parties can be raised by appellant by demurrer or answer, and the trial court will then decide whether a complete determination of this controversy can be had without such representative's being joined. But, if he should not be made a party by appellee, nor his absence suggested by appellant, it would be the duty of the court, of its own motion, to order him brought in, if his presence became necessary to a just and full determination of the matter in litigation. Rev. Stats. 1901, par. 1345; *O'Connor* v. *Irvine,* 74 Cal. 442, 16 Pac. 236.

The overruling of appellant's objection to the admission of the testimony of John Gleeson, a party to the suit, is assigned as error. The testimony of Martin Costello, given at a former trial of this case, was introduced by appellee under the provisions of paragraph 2537 of the Revised Statutes of 1901, which permits either party to the record to read in evidence the testimony of a deceased witness taken at a previous hearing. Appellee was then permitted, over the objection of appellant that he was not a competent witness under the provisions of paragraph 2536 of the Revised Statutes of 1901, to testify in his own behalf. Said paragraph 2536 reads: "In an action by or against executors, administrators or guardians, in which judgment may be rendered, for or against them as such, neither party shall be allowed to testify against the others as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party or required to testify thereto by the court." The general rule is that all parties are competent witnesses in their own behalf, but this statute makes an exception to the rule where one of the parties is an administrator, executor or guardian, and judgment may be rendered for or against him as such. Neither party is allowed to testify as to any transaction with or statement by the testator, intestate or ward in such a case, unless he is brought within one of the two exceptions—that is, called to testify thereto by the opposite party, or required to testify thereto by the court. To adopt without exception the maxim that "The mouth of one party being closed by death, the mouth of the other is closed by the law," would, in some instances, promote justice by preventing the enforcement of unjust claims against the estates of

deceased persons, but, in others, would defeat justice by rendering it impossible to enforce just claims; while to allow the living to testify under such conditions without restriction would give him undue advantage over the estate of the deceased party, and invite the commission of perjury by dishonest persons in the assertion of unjust claims and proof of the same by their own testimony. The unwisdom of adopting either extreme being apparent, the legislature provided that parties could testify in such cases when required to do so by the court. By this provision discretionary power is conferred on the trial court to determine the competency of parties as witnesses to transactions with or statements by the deceased in cases where the opposite party is an administrator, executor or guardian, and judgment may be rendered for or against him as such. When, therefore, appellee introduced in evidence Costello's testimony, he did so without the assurance, but with the hope, that the trial court would take the view that the presence and availability of this testimony was, in its opinion, sufficient ground to permit Gleeson to testify. The court agreed with appellee, and, in the exercise of its discretion, overruled the objection to Gleeson's competency, which, as held by the predecessor of this court in *Goldman* v. *Sotelo*, 7 Ariz. 23, 60 Pac. 696, was equivalent to "requiring" him to testify. If the opposite view had been taken by the court, and the objection sustained, Gleeson would have been in the position of having presented to the court and jury Costello's version of the controversy with no way provided of giving his. Inasmuch, however, as the testimony was admitted by the trial court, in whom had been lodged, by the statute, the power to decide its competency, it is properly in the record.

Appellant contends further that appellee, having introduced Costello's testimony as that of a deceased witness, should not have been permitted to contradict it, for the reason that it could only be received as the testimony of the party offering it, who in this instance was not in a position to invoke the rule allowing the contradiction and impeachment of one's own witness when misled and surprised in the character of the testimony given. Costello's statement was not introduced to support appellee's view of the case, but for the purpose of laying a foundation for the introduction of Gleeson's testi-

XV Ariz.—19,

mony. Appellee proceeded upon the theory that the fact of
the decedent's having given his version of the controversy
would appeal to the court's conscience as furnishing a suf-
ficient basis for allowing Gleeson to give his; and, in over-
ruling appellee's objection, the court stated that if he did
not have Costello's testimony he would not hesitate to shut
out Gleeson's. Considering, therefore, the purpose for which
the deceased's statement was introduced, as well as the reason
given by the court for permitting Gleeson to testify, we are
unable to see wherein the rule denying one the right to con-
tradict his own witness could have any application.

The Rockefellow map, showing the mines in the Turquoise
mining district, was received in evidence, and its admission is
assigned as error. Upon this map appears a group of mines,
with heavy lines drawn around them, marked "The Costello
Copper Company." These are the mines described in the
complaint and judgment. A corporation known as the Cos-
tello Copper Company was organized by Costello, Gleeson and
Reilly on August 4, 1903, and Costello testified that it was for
the purpose of taking over the Copper Belle mines, on which
he then held two mortgages aggregating $68,000, it being then
supposed that he would acquire these mines by foreclosing
the mortgages, and also agreed that, when title to them was
thus secured, he would convey them to the corporation with
the understanding that Reilly and Gleeson would pay to him
each one-third of the cost thereof, and become equally inter-
ested therein with him. The mines, however, were acquired
by the Shannon Copper Company, and the Costello Copper
Company was abandoned without the acquisition of any prop-
erty or the transaction of any business. The map was offered
to refute Costello's statement, appellee contending that the
legend "The Costello Copper Company," which designated
the group of mines embraced within the heavy lines, tended
to prove that at the time of incorporating it was the inten-
tion to convey to the corporation the mines described in the
complaint, and not the Copper Belle mines, which appeared
on the map, but not under the designation "The Costello
Copper Company." Appellant urges that the map, being
offered as an admission against interest, should not have been
received, because it was not shown that Costello ever saw it
before, or that he authorized it or the legend upon it. Cos-

tello testified: "I paid Rockefellow for making a map of this district showing the Powers and Gaetjens groups, and I have seen that map. I had to get the ground patented. I could not say whether Rockefellow made more than one map for me of the mines in that district. Reilly ordered it. He was doing the legal work in securing this patent." The map on which appeared the Gaetjens and Powers groups was then shown to him, whereupon he testified: "What you now show me is not the map I have reference to. I have never seen this map before, except here in the courtroom to-day or yesterday." He admitted, however, having seen several maps, including one of this district, hanging on the wall in Reilly's office, though he stated that he did not know if the one he paid Rockefellow for was among them. This map was made upon the order of (and delivered to) Reilly, who instructed Rockefellow to place on it the words "The Costello Copper Company." It was paid for by Costello, who denied that Reilly owned any interest in the claims appearing thereon, and hung on the wall in the latter's office, where Costello was almost a daily visitor, and in plain view from where he usually sat when talking to Reilly. It was not a mere map of claims for patent, but was a map of the Turquoise district, and it did not appear that more than one map showing this district was made for Costello. If Reilly owned no interest in the property shown thereon, no reason appears why he should have ordered the map, unless it be that in so doing he was acting in behalf of the owner of the claims who paid for it. While, therefore, no one testified directly that Costello actually saw the map or authorized it or the legend upon it, and although he denied any knowledge of it whatever, yet we think the circumstances pointing to the contrary are such that the ruling of the trial court, who observed the witnesses and heard them testify, admitting it should not be disturbed by this court. "The question whether a sufficient foundation has been laid for the admission of documentary evidence is addressed to the discretion of the trial court, which was not abused in this case, for there was evidence fairly tending to establish the authenticity of the letters." *O. N. Bull Remedy Co.* v. *Boyer,* 109 Minn. 396, at page 399, 124 N. W. 20, at page 22 (18 Ann. Cas. 413, 32 L. R. A., N. S., 519); *McManus* v. *Nichols-Chisholm Lumber Co.,* 109 Minn. 355, 123 N. W. 1080.

At the conclusion of the testimony, appellant requested that the case be submitted to the jury in the form of interrogatories. This request was denied, and the entire case, including a partnership accounting involving a large number of items, given to the jury without separation of the issues. Two forms of verdict were furnished, one finding for the plaintiff an undivided one-third interest in the claims described in the second amended complaint and judgment for the sum of blank dollars, and the other for the defendant. The refusal of the court to submit special interrogatories, but, instead, using the general verdict, is assigned as error. The peculiar province of juries in equity cases is to pass on issues of fact. The court, when a jury's advice on the facts is sought, frames interrogatories in such a way as to be answered "yes" or "no," and propounds them to the jury, and, having been advised by the jury's answers thereto, as to the facts, applies the law—as upon an agreed state of facts or as though passing on a demurrer—and evolves its judgment accordingly. Such being the respective functions of the court and jury, we are unable to see wherein the judgment of the court could be aided by the general verdict in any case wherein the issues are either numerous or involved. The fact that upon the whole case the jury may think the plaintiff's cause of action is sustained does not establish the further fact that it would answer all the interrogatories, which a given case might require to be answered, in such a way that the law when applied to the facts as found would reach the same result. In the case at bar, the jury found for appellee, yet we do not know how it would have answered interrogatories so framed as to properly present these issues—whether Reilly contributed to the partnership one-half of the Mono claim; whether the Power option was accepted by Costello and Reilly as an offset to the Mono claim and the $20,000 purchase price of the Power claims; whether the option taken in Costello's name on these claims was a renewal of Gleeson's; whether the alleged $25,000 was paid by Gleeson to Costello, and if so, whether it was intended by them as a contribution to the alleged partnership; whether the sale of the Copper Belle notes to Costello was *bona fide*. The record suggests others. The jury may have thought that the Power option was not accepted by Costello and Reilly as an offset to the Mono claim

and the $20,000 paid for the Power claims, but have felt that appellee had contributed his proportion in the way of salary and team hire. Under the general verdict, such a view on a material fact could not be known, but, if the jury had answered the question directly, the court would have been advised thereon, and judgment for appellant would have followed accordingly, the salary and team items not being alleged as partnership contributions. We think, therefore, without regard to whether a trial by jury was given by statute, as a matter of right, that when the jury was called, the case being one of equitable cognizance alone and containing numerous and varied issues, the court should have submitted for its determination such issues of fact as the nature of the case demanded, since such a course is the only one that would have enabled the court or the parties to know how the jury passed on any vital issue involved. From an examination of the different provisions of the statute in force at the time this suit was tried, relating to the subject of verdicts, we have been unable to find any provision indicating an intention on the part of the legislature to deviate from the established practice in equity in this particular. In Texas, where trial by jury in equity cases is a constitutional right, it is the established practice to submit special interrogatories, and the general verdict is not proper. "There ought to have been issues for the jury to pass upon, whether there had been a contract between the parties. If so, whether it had been canceled. If canceled, whether the cancellation had been procured by the fraud of the defendant. How much land, if any, the plaintiffs were entitled to from the evidence. After the jury had responded to these issues, the judge, on the basis of the facts so found, could have framed his decree upon the principles of equity arising from them." *Hall* v. *Layton,* 10 Tex. 56; *Adkins* v. *Ware,* 35 Tex. 557; *Ikerd* v. *Beavers,* 106 Ind. 483, 7 N. E. 330. The refusal, therefore, to submit special interrogatories is error which necessitates a reversal of the case.

Counsel for both appellant and appellee have filed able and exhaustive briefs on the question of the advisory character of the verdict in an equity case. We find it unnecessary, however, to pass on this question, inasmuch as we are here confronted with a general verdict which advises the court of no

facts. There has been decided by the jury no issue of fact which could either be enlightening to the court or binding upon it in the determination of its action.

Other errors have been assigned, but we deem it unnecessary to consider them, inasmuch as they have been practically determined by the views given on the propositions discussed.

For the reasons above stated, namely, the failure to submit the issues to the jury by proper interrogatories, we conclude that substantial justice requires a reversal of the case, and it is remanded to the superior court of Cochise county, with instructions to grant a new trial. It is so ordered.

FRANKLIN, C. J., and ROSS, J., concur.

N. B.—Judge CUNNINGHAM being disqualified, and announcing his disqualification in open court, the remaining judges, under section 3 of article 6 of the Constitution, called in Honorable A. G. McALISTER, Judge of the superior court of the state of Arizona, in and for the county of Graham, to sit with them in the hearing of this cause.