## Sunfire Coal Co. v. Day et al.
## Day v. Sunfire Coal Co. et al.
(Decided March 12, 1937.)

CRAFT & STANFILL for Sunfire Coal Co.
ROY HELM for Ollie and Delphia Day.
MERVIN K. EBLEN for Bobby Dean Day.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

On January 11, 1935, Henry Day, while working for the Sunfire Coal Company, and under the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.), was instantly killed by falling slate. His average wages were $4.36 per day. There is but one question presented, and it is: Who, if any one, were dependent upon him? The Sunfire Coal Company says he left no dependents and claims its liability is measured by section 4893, Ky. Stats., and its subsection 1.

Claim was made May 4, 1935, under form 11 by three infants through their next friend, Willard Day. These claimants were Ollie Day, an unmarried daughter of the deceased, born May 20, 1914; Delphia Day another unmarried daughter of the deceased, born November 7, 1917; and Boby Dean Day, an illegitimate son of Delphia Day born April 21, 1935.

On a hearing by a single member, Delphia Day and Ollie Day were adjudged totally dependent and were each awarded $6 per week for 335 weeks, and the claim of the infant Bobby Dean Day was denied.

The Sunfire Coal Company sought first a full board review, which affirmed the action of the single member, and then appealed to the circuit court. Bobby Dean Day followed the same course and both were unsuccessful, both before the full board and in the circuit court, and each has appealed from that judgment to this court.

The appeal of the Sunfire Coal Company was numbered 5552 in the circuit court, and Bobby Dean Day's appeal was there given No. 5555, and for convenience we have used those same numbers to distinguish them in this court.

The two appeals were heard together in this court, and we shall dispose of them in one opinion.

## The Facts.

Henry Day lost his wife in 1930. He then had one son, Willard Day, aged 22, a daughter, Nellie Day, aged about 20, another daughter, Ollie Day, aged 15, and a third daughter, Delphia Day, then 12 years of age. The family did not break up but continued to live together, the son Willard paying into the family purse $26 per month as his board. The girls did the housework for their father, Nellie taking the lead, and from the board paid by his son, and his own earnings, Henry Day provided food, raiment, shelter for the family, and a little spending money for the girls, but did not clothe Willard Day.

Later Nellie Day married Fred Burris, and since has been supported by him, but she continued to live with her father, and her husband made that his home except when away at his work, and he and Mrs. Burris now have a child who was living in the home of Henry Day when the latter died but this child was supported by its father, and no claim was made on its behalf. The family appears to have continued after the death of Henry Day to live together as it had before, and on April 21, 1935, Delphia Day gave birth to Bobby Dean Day, an illegitimate son.

## Rulings on the Evidence.

The first witness called was Ollie Day, and the Sunfire Coal Company complains now because she was allowed, over its objection and exception, to testify for her sister Delphia Day, and for like reason is objecting because Delphia Day was allowed later to testify for Ollie Day. The basis of its objections is that each of these girls was by virtue of subsection 2 of section 606 of the Civil Code of Practice incompetent to testify for herself concerning transactions with and acts done by Henry Day, who was dead at the time the evidence was offered to be given.

Neither of these girls was asked anything about any transaction between herself and her father or anything done for or furnished her by her father, but each did testify about what her father did for the other and about transactions between her father and the other.

The admission of that evidence was **not error**. By

section 605 of the Civil Code of Practice all of the common-law disqualifications of witnesses of understanding have been swept away except those preserved by section 606, and section 606 contains nothing that disqualifies either of these girls as a witness for the other, their interests are adverse, each girl's recovery, if any, being lessened by the success of the other, and we have so held in Miller v. Walsh's Adm'x, 240 Ky. 822, 43 S. W. (2d) 42; and Harlan Fuel Company v. Swanson et al., 220 Ky. 449, 295 S. W. 406. See statement of the rule in and the many other Kentucky cases cited under text of 70 C. J. p. 351, sec. 468, note 57.

### Did Henry Day Leave Any Dependent?

The Sunfire Coal Company offered no evidence and argues the evidence for claimants does not show Henry Day left any dependents. The girls, it claims, failed to show they were dependent because the evidence shows they are more than 16 years of age, and there is no evidence they were incapacitated from wage earning.

That these girls lived in the home of and obtained all their support from their father is not disputed. From that it follows they were totally dependent upon him. We have no farther concern. The causes that brought about the dependency are immaterial. See 71 C. J. p. 529, sec. 272, note 28.

The legislative department has given the courts no right to inquire into the merits of the dependent or the propriety of the arrangement the deceased had made and which existed at his death. The wisdom of the act is a question for the Legislature. See L. E. Myers Co. v. Noland, 222 Ky. 748, 2 S. W. (2d) 387; Jones v. Louisville Gas & Electric Company, 209 Ky. 642, 273 S. W. 494; Janesville Sand & Gravel Co. v Industrial Commission, 197 Wis. 421, 222 N. W. 317, 62 A. L. R. 156; and the many cases cited in the note following it in the latter publication.

### Was Bobby Dean Day Dependent?

This child was born three months and ten days after the death of his grandfather. Subsection 4 of section 4893, Ky. Stats., provides:

> "All relations of dependency herein referred to shall be construed to mean dependency existing at the time of accident to the employee."

That determines the status of the child. It is argued for him that by section 4895, Ky. Stats., the term "child" includes posthumous children, but we find no warrant, in section 4895 of our statute, for saying the term "child" includes a posthumous illegitimate grandchild. In Community Baking Company v. Reissig, 164 Md. 17, 164 A. 176, the ruling favored an illegitimate grandchild, but the child in that case was four years old, living in the home of his grandfather, the employee, and being wholly supported by him when the employee received his fatal injury.

The action of the trial court in upholding the awards of $6 per week each to Ollie Day and Delphia Day as being totally dependent on Henry Day and denying an award to Bobby Dean Day was correct.

In both appeals the judgment is affirmed.