377 P.2d 305

**Steve CONDOS, Administrator of the Estate of Gust Stallos, deceased, Appellant,**

**v.**

**Peter FELDER, Appellee.**

**No. 7252.**

Supreme Court of Arizona.

En Banc.

Dec. 28, 1962.

Rehearing Denied Feb. 5, 1963.

Charles Christakis, Phoenix, for appellant.

Charles M. Brewer and Walter F. Brinkman, Phoenix, for appellee.

UDALL, Vice Chief Justice.

From a judgment in the Maricopa County Superior Court declaring appellant Steve Condos, administrator of the estate of Gust Stallos, deceased, the constructive trustee of certain real and personal property for the benefit of the appellee Peter Felder, and ordering appellant to make an accounting and to convey to appellee the legal title to the property of the estate as well as awarding appellee his costs expended therein, appellant appeals.

Appellant assigns as error the court's refusal to grant his motion for judgment, and its denial of his motion to set aside the judgment and grant a new trial. The assignments of error are based on the following propositions: (1) The existence of a constructive trust was not proved by

clear and convincing evidence. (2) Since the deed to the property was in the name of the deceased Gust Stallos, and was so recorded, and there was evidence that he alone purchased it, appellee's action is barred by the Statute of Frauds. (3) The evidence that was adduced was admitted in contravention of the Arizona Dead Man Statute.[1] (4) There was competent evidence to show that appellee's cause of action was barred by the Statute of Limitations as well as equitable laches. (5) The judgment was excessive.

Some twenty years ago Gust Stallos and Peter Felder, both immigrants to this country, developed a friendship which brought them together in business. In the course of their dealings they purchased property in Phoenix, Arizona, upon which a grocery store stood. Both men moved onto that property to live and work the grocery business. Stallos had a good knowledge of the English language and was acquainted with business affairs to a much greater degree than Felder. Therefore, he took over the management of their business.

On September 25, 1946, the two men executed a copartnership agreement for the conduct of the grocery business in which it was stated that Stallos owned the real property and was to receive $150 a month rental from the profits of the store. Felder was given the right to live on the premises and was given a one-half interest in the grocery stock for $2,060, the receipt of which was acknowledged. Under the terms of the agreement Felder was never to own any interest in the real estate. Felder being illiterate was unable to read this agreement before he signed it.

The alliance proved satisfactory for both men until February 13, 1960, when Stallos died and his property was put into the hands of his administrator. It was then that Felder discovered that by virtue of the copartnership agreement and the deed being in Stallos's name alone he had no interest in the real estate and that he was going to have to move from the premises. Following these events Felder brought this action to acquire title to the land, buildings and merchandise. The facts heretofore set forth are not in dispute. However, Felder contends that the written agreement does not reflect all the facts with regard to the relationship of the parties and the ownership of the property, and that he signed it believing it to be a deed giving him an

---

1. A.R.S. § 12-2251: "In an action by or against executors, administrators or guardians in which judgment may be given for or against them as such, *neither party* shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party, *or required to testify thereto by the court.* The provisions of this section shall extend to and include all actions by or against the heirs, devisees, legatees or legal representatives of a decedent arising out of any transaction with the decedent." (Emphasis supplied.)

interest in joint tenancy in the real property.

Felder states that he was told by Stallos that the property upon which the store was situated belonged to both of them in joint tenancy and that in the event of the death of one of them the survivor would take it all. He further asserted that he furnished the money with which the property was purchased and did so with the understanding that he was to be a joint tenant thereto. Being illiterate and unable to read the copartnership agreement he was told by his copartner that the instrument was a deed of title and gave them both an undivided half interest in the property. On the strength of this assurance he signed the document, and not until after the death of his copartner did he learn that these representations were untrue.

The evidence shows that during the years of their association Stallos ran the affairs of both himself and Felder. Felder had few dealings with anyone except through Stallos. Stallos did the thinking, and Felder very willingly submitted to this arrangement. Consequently, a high degree of trust and confidence was imposed in Stallos by Felder. To substantiate this fact Felder presented the testimony of a number of witnesses who had been intimately acquainted with both of them. They testified not only of the actual relationship between these men but also of hearing Stallos state on numerous occasions that he and Felder held the property in joint tenancy and that Felder had furnished the money for the purchase of the property. The foundation for this evidence was properly laid in each instance and the appellant does not contend otherwise on this appeal.

To support appellant's position at the trial, witnesses who were only casual associates of Stallos and the appellant himself were sworn and testified. None of the evidence advanced by both parties shows that the relationship between Felder and Stallos was anything but that of a high trust and confidence or that the circumstances were such that Felder was not led to believe that he was a joint tenant. There was testimony to the effect that Stallos had used his own money at the time the property was purchased and that he had told at least two people that he owned the property himself. But these people were unfamiliar with the situation even to the extent that they knew little if anything about Felder, Stallos's most intimate associate, let alone Stallos's business dealings.

When Steve Condos, the appellant and the administrator of Stallos's estate testified, the question arose as to his integrity. He had alleged in his application for letters of administration that he was a relative of Stallos, when in fact evidence shows that

he was not related. Other affirmations in the application were established as being untrue.

As to the receipts for the purchase money they proved only that money was received from Stallos but indicated nothing as to his source for the funds. Furthermore, we cannot see that the terms of the copartnership agreement are of any special consequence if the court accepted appellee's evidence as true.

■ A constructive trust is remedial in nature. Justice Cardoza said in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380 and 381, (1919):

> "* * * A constructive trust is the formula through which the conscience of equity finds its expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.
>
> *   *   *   *   *   *
>
> "A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." [2]

This being true our court said in Smith v. Connor, 87 Ariz. 6, 347 P.2d 568, 570 and 576 (1959):

> "Unquestionably, a person who wishes to impose a trust on a transaction which on its face appears to be a valid transfer must convince the trier of fact of the trust by clear and convincing proof.
>
> *   *   *   *   *   *
>
> "Even where actual fraud does not exist in the acquisition of property, a constructive trust will arise whenever the circumstances make it inequitable that the property should be retained by the one who holds the legal title."

Then with regard to such a trust being imposed on land we said:

> "* * * Although the statute of fraud prohibits the enforcement of an express parol trust in lands, Rogers v. Greer, 70 Ariz. 264, 219 P.2d 760, it has no application to constructive trusts which arise by operation of law and not by agreement." [3]

■ This court recognized in Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955), that when a confidential relationship exists between two parties even though no active

---

2. In Linder v. Lewis, Roca, Scoville & Beauchamp, 85 Ariz. 118, 333 P.2d 286, 290 (1958), we said: "The forms and varieties of these trusts are practically without limit and the principle is applied wherever it is necessary for the obtaining of complete justice."

3. In the Smith v. Connor case we note that there existed a clear conflict in testimony with regard to the transaction yet the court found the evidence sufficiently clear and convincing to impose a constructive trust.

fraud exists other circumstances will give rise to an implied fraud. Bogert on Trusts and Trustees, 1946 Ed., Vol. 3, Part 1, Sec. 482, makes this comment:

"There is no uniform practice among the courts in their use of the phrases 'fiduciary relation' and 'confidential relation'. In many decisions the words are used as synonyms. In most cases, however, the latter phrase * * * [does] not [fall] into any well-defined category of the law. The relations of trustee and cestui, executor or administrator and creditors, next of kin or legatees, guardian and ward, principal and agent, attorney and client, corporate director and corporation, and the like are easily thrown into distinct subdivisions of the law. They have distinctive names. The term 'fiduciary' might well be reserved for such relations.

"But there are other cases where there is just as great intimacy, disclosure of secrets, intrusting of power, and superiority of position in the case of the representative, but where the law has no special designation for the position of the parties. It cannot be called trust or executorship, and yet it is so similar in its creation and operation that it should have like results."

██ Applying these principles to this case we find all the requirements for a finding of a constructive trust satisfied. The testimony with regard to the confidential relationship between Peter Felder and Gust Stallos is sufficiently clear and convincing, Murillo v. Hernandez, supra; and, the circumstances of the purchase of this property being as they are, the requirement that fraud, actual or implied, must be found to impose such a remedy is satisfied by nothing more than that there was a particular confidence shared by these two men. Dawson v. McNaney, 71 Ariz. 79, 223 P.2d 907 (1950). But we need not rely on that alone for there was evidence that Stallos had actually represented one thing to Felder and done another. He had taken Felder's money with which to buy property in the name of both but instead bought it in his own name and then covered his action by taking advantage of Felder's illiteracy. This gave rise to actual fraud. The fact that these matters were proved by oral testimony is not significant. The Statute of Frauds does not apply to constructive trusts in land. See Smith v. Connor, supra; Murillo v. Hernandez, supra; and Stewart v. Schnepf, 62 Ariz. 440, 158 P.2d 529 (1945).

Our search of the record reveals sufficient clear and convincing evidence to establish a constructive trust, and there are no principles of law which bar the cause of action.

██ As to the application of the Arizona "Dead Man" statute, A.R.S. § 12–2251, we point out that its application is discre-

**372**

tionary with the trial judge, and he can permit testimony regarding conversations and transactions with the deceased whenever he feels justice will be served. Goff v. Guyton, 86 Ariz. 349, 346 P.2d 286 (1959); Steinfeld v. Marteny, 40 Ariz. 116, 10 P.2d 367 (1932). In this case we are directed to no evidence of abuse of this discretion. Furthermore, only parties to the action are affected by that statute. Corbett v. Kingan, 19 Ariz. 134, 166 P. 290 (1917). The testimony establishing Felder's case is not that of himself or other parties to the action but rather that of disinterested neighbors and friends.

■ With regard to the action being barred by the statute of limitations we recognize that the discovery of fraud dates from the time that one, by the exercise of reasonable diligence, might have discovered such fraud. Guerin v. American Smelting & Refining Co., 28 Ariz. 160, 236 P. 684 (1925); In re Cassidy's Estate, 77 Ariz. 288, 270 P.2d 1079 (1954). But in this case the evidence of Felder's illiteracy and unfamiliarity with business affairs generally as well as his undeviating confidence in Stallos's ability and integrity would raise some question as to what constituted due diligence in his situation. He relied implicitly in Stallos for information and details as to the status of his interest in the property. Nor did he have reason to inquire. Stallos was his sole advisor and "guardian". There was no distrust. Nor was there enough business acumen on Felder's part to direct him to outside protection for his own possessions. In Felder's situation we must conclude that the statute of limitations had not run and due diligence was exercised. He trusted in the only person in whom he could trust for he had intimate association with no others.

■ Appellant's claim that the judgment was excessive is not sustained by the evidence. A joint tenancy with a right of survivorship was what Gust Stallos professed existed and what Peter Felder believed they had. To deny less than that would be inequitable. Equity has been satisfied by the judgment and this court will not disturb it.

Judgment affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.