544 P.2d 1103

Faith CACHENOS, a widowed woman,
Appellant,

v.

Marcus T. BAUMANN and Rachel Baumann,
husband and wife, Bankers' Finance &
Holding Company, Western Surety Com-
pany, Kenneth R. Lavin, Kenneth R. Lavin
and George J. Lucero d/b/a Lake Havasu
Estates, the Estate of Ben Chittenden, De-
ceased, and Arizona Real Estate Depart-
ment, Appellees.

No. I CA–CIV 2715.

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 22, 1976.

———◆———

Bonn, Anderson & Moore, by Jeffrey D. Bonn, Phoenix, for appellant.

Sorenson, Esser & Moore, by George Sorenson, Jr., Phoenix, for Western Surety Co.

Steven M. Friedman, Phoenix, for Kenneth R. Lavin.

Bruce E. Babbitt, Atty. Gen., by James W. Woodcock, Asst. Atty. Gen., Phoenix, for Arizona Real Estate Department and Estate of Chittenden, deceased.

Acer & Kennedy, by John W. Acer, Phoenix, for Bankers' Finance & Holding Co.

## OPINION

JACOBSON, Presiding Judge.

The sole issue raised by this appeal is whether the trial court abused its discretion in applying the dead man statute, A.R.S. § 12–2251, under the circumstances of this case.

While this matter arose under cross motions for summary judgment, the parties stipulated that the trial court, in determining whether there were any disputed issues of material fact should also determine the applicability of A.R.S. § 12–2251 to the facts and the admissibility of the evidence presented by affidavits and depositions. The appellant also stipulated that the affidavits and depositions contained all the evidence which appellant would present, if the matter was actually tried.

Based upon the stipulation, the trial court found that the dead man statute applied and thus, deleting any evidence of representations allegedly made by the deceased, Ben Chittenden, the trial court found that appellant's allegations of fraud could not be supported and entered judgment for the various defendants. The plaintiff-appellant, Faith Cachenos, has appealed.

The facts as presented by the plaintiff are as follows. The plaintiff, Mrs. Cachenos, being an elderly woman with no prior business experience, first met the deceased, Ben Chittenden, in 1965 or 1966, in connection with a newspaper ad placed by Snowflake Highlands Development Company for "investors" in land contracts. As a result of this contact, Chittenden became Mrs. Cachenos' trusted friend and financial advisor.

Prior to 1968, Chittenden and defendant-appellee Kenneth R. Lavin incorporated a company known as United Brokerage, Inc. In February, 1968, Chittenden approached Mrs. Cachenos for a loan to United Brokerage in the sum of $6,500, purportedly for the purpose of having a survey done on certain property located in Phoenix, Arizona, which United Brokerage was going to buy for a high-rise office building. Mrs. Cachenos subsequently gave Chittenden a check in the sum of $6,500 and received a note and mortgage in return.

In June, 1968, Arizona Land Company, a company both Chittenden and Lavin had

worked for, went into bankruptcy. Lavin then became employed by a new corporation known as Arizona Acceptance Corporation. This corporation was to engage in the selling of paper or contracts generated by other corporations' land sales. Prior to the takeover of the assets of Arizona Land Company by the trustee or receiver, Lavin, with the assistance of a Karla G. Hensley, secretly removed various land contracts from Arizona Land Company to the offices of Arizona Acceptance Corporation.

In July, 1968, Chittenden obtained a check from Mrs. Cachenos in the sum of $19,786.83 for the purchase of ten parcels of land with existing contracts of sale from Arizona Acceptance Corporation. The "package" sold to Mrs. Cachenos originally came from contracts owned by Arizona Land Company and had file notations from that company's records indicating that these contracts should not be sold. Affidavits by Karla G. Hensley and defendant-appellee, George J. Lucero, indicate that for two or three months, payments to Mrs. Cachenos on these contracts were made personally by Chittenden and Lavin.

About this time, Lavin and Lucero formed a partnership known as Lake Havasu Estates. This partnership had an open option to purchase land in a subdivision known as Lake Havasu Estates located in Mohave County. The basis of this option was a monthly cash payment of $15,000, the partnership selling lots in the subdivision upon which they had exercised their option.

After the formation of the partnership, Chittenden again contacted Mrs. Cachenos and informed her that he did not consider the investment made in the Arizona Acceptance Corporation contracts to be safe. He therefore suggested that she surrender to him the security received for the $6,500 loan to United Brokerage, the deeds and contracts received from Arizona Acceptance Corporation and for an additional $12,396.41 he would arrange a loan to Lake Havasu Estates secured by mortgages on

40 acres of uncontiguous lots scattered throughout the subdivision. Mrs. Cachenos agreed to this proposition.

Mr. Lucero's affidavit stated that he was ordered by Lavin to locate a 40-acre tract of land in Mohave County in order to close a "deal" with Chittenden's client, Mrs. Cachenos. Lucero found a 40-acre parcel located approximately 30 miles from Lake Havasu Estates Subdivision which was purchased for approximately $8,000. This land was transferred to Lake Havasu Estates, a partnership, then to Lake Havasu Estates, a corporation, and thereafter deeded to Chittenden, who in turn deeded the property to Mrs. Cachenos in 32 one and one-quarter acre parcels. Mrs. Cachenos was advised by Chittenden that these 32 deeds represented uncontiguous parcels located throughout the Lake Havasu Estates Subdivision.

Lucero testified that Chittenden appeared at the offices of the partnership with Mrs. Cachenos' check in the sum of $12,369.41 and delivered the same to Lavin. Mrs. Hensley in the company of Lavin and Chittenden then went to the Valley National Bank where the check was negotiated, $4,396.41 being deposited to the account of Lake Havasu Estates and the balance in cash was paid to Chittenden.

Mrs. Cachenos did not learn until two years later, at which time the "loan" to Lake Havasu Estates was to be paid, that the only evidence of the transaction showed a purchase of 32 one and one-quarter acre parcels, for which she had spent $38,000, and which had a value of approximately $8,000.

During a portion of the time that Mrs. Cachenos was dealing with Chittenden he was a licensed real estate salesman for defendant-appellee, Marcus Baumann, broker, and both Baumann and Chittenden were officers in a corporation known as Bankers' Finance & Holding Company. Defendant-appellee, Western Surety Company, was the bonding company for Baumann.

Prior to this action being filed, Chittenden committed suicide and his estate was then represented by way of interpleader by the Arizona State Real Estate Recovery fund.

On appeal, Mrs. Cachenos raises basically two issues:

1. Did the trial court abuse its discretion, under the circumstances of this case, by holding that the "dead man statute", A. R.S. § 12–2251, precluded testimony by a party to fraudulent representations made by a deceased defendant? And,

2. Assuming the trial court did not abuse its discretion, was there independent evidence of fraud sufficient to preclude the granting of summary judgment?

Since we are of the opinion that this matter must be reversed on the first issue, we do not reach the second.

A.R.S. § 12–2251 (1956) provides:

"In an action by or against executors, administrators or guardians in which judgment may be given for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party, or required to testify thereto by the court. The provisions of this section shall extend to and include all actions by or against the heirs, devisees, legatees or legal representatives of a decedent arising out of any transaction with the decedent."

■ This statute has been interpreted to mean that the admission of testimony regarding transactions with or statements by the deceased is within the sound discretion of the trial court. *Condos v. Felder,* 92 Ariz. 366, 377 P.2d 305 (1962); *Costello v. Gleeson,* 15 Ariz. 280, 138 P. 544 (1914).

■ While the discretion vested in the trial court to admit or reject testimony is well established, the Arizona cases have not clearly articulated the basis upon which this discretion should be exercised. A reading of all the Arizona cases on this subject [1] leaves the reader with the impression that the discretion of the trial court in admitting testimony of transactions with or statements by the decedent will be upheld where (1) it appears an injustice will result if the testimony is rejected, *Davey v. Janson,* 62 Ariz. 39, 153 P.2d 158 (1944), or where there is independent evidence to corroborate the transaction with the decedent. *Goff v. Guyton,* 86 Ariz. 349, 346 P.2d 286 (1959); *Condos v. Felder, supra.* Conversely, it would appear if one of these two elements are present, a rejection of testimony concerning transactions with or statements by the decedent would result in an abuse of discretion.

In determining the competency of the corroborating evidence, a further determination of the scope of A.R.S. § 12–2251 must be explored. It is contended by both the Arizona Real Estate Recovery Fund and Lavin, that the prohibition of the dead man statute applies not only to testimony by the plaintiff, Mrs. Cachenos, but also to all other parties to this litigation, regardless of their interest vis a vis the plaintiff, citing *Corbett v. Kingan,* 19 Ariz. 134, 166 P. 290 (1917). What the court in *Corbett* stated was:

"We have come to the conclusion that the persons prohibited from testifying under our statute as to transactions and statements of a deceased person when a judgment may be either for or against the legal representative, heir, devisee, or legatee of the decedent *are confined to formal technical parties to the suit,* and that the interest of the witness, however

---

1. *See,* for example, *Goldman v. Sotelo,* 7 Ariz. 23, 60 P. 696 (1900); *Costello v. Gleeson,* 15 Ariz. 280, 138 P. 544 (1914); *Johnson v. Moilanen,* 23 Ariz. 86, 201 P. 634 (1921); *Brought v. Howard,* 30 Ariz. 522, 249 P. 76 (1926); *Steinfeld v. Marteny,* 40 Ariz. 116, 10 P.2d 367 (1932); *Wolff v. First Nat. Bank,* 47 Ariz. 97, 53 P.2d 1077 (1936); *Phoenix Title and Trust Co. v. King,* 58 Ariz. 477, 121 P.2d 429 (1942).

immediate or extensive, is not the disqualifying factor." (emphasis added). 19 Ariz. at 146, 166 P. at 294.

█ This statement, which appears to make the dead man statute applicable to all "technical parties to the suit" must be read in connection with what was being determined in the *Corbett* litigation. There the contention was made that the wife of the plaintiff, being an interested party to the litigation, was barred by the statute from testifying as to statements or transactions made by the decedent. The *Corbett* court rejected this contention, holding that the dead man statute, being in contravention of the rule that all witnesses, including parties and interested persons, are competent to testify, should be strictly construed and limited to "parties" to the litigation. The court went on to hold that the wife of the plaintiff not being a party to the transaction was competent to testify as to statements made by the deceased. This is a far cry from holding, as contended by the appellees, that all "technical parties" to the litigation, including co-defendants, regardless of their interest in the outcome of plaintiff's litigation, are likewise incompetent to testify as to statements or transactions with the deceased. In this regard, we believe the better rule to be that expressed in *Keough v. St. Paul Milk Co.*, 205 Minn. 96, 285 N.W. 809 (1939):

> "On its face the statute [dead man statute] disqualifies every person who is made a party to the record. The application of this language has been limited to those persons who are properly joined as parties [citation omitted], and further limited to those of the proper parties to the record who are parties to the issue." [citation omitted]

> "No good reason can be suggested for excluding the testimony of one who, although a party to the action for some other purpose, is not a party to, or interested in, the issue to which his testimony relates." 205 Minn. at 128, 285 N.W. at 826.

Applying this rule to co-defendant George Lucero, it is apparent that while he may possibly share joint liability to plaintiff through his partnership interest in Lake Havasu Estates (a determination we need not make), it is apparent that he has no interest in the issue of the purported fraud and thus liability of Chittenden. Moreover, if such an interest could be shown, Lucero's interest would obviously be adverse to that of Mrs. Cachenos, the plaintiff, and for this additional reason he would be competent to testify as to statements made or transactions with the decedent, Chittenden. *Sunfire Coal Co. v. Day*, 267 Ky. 716, 103 S.W.2d 82 (1937). We therefore hold that Lucero's affidavit and deposition should have been considered by the trial court in determining whether independent evidence existed to corroborate the testimony of the plaintiff, Mrs. Cachenos.

█ Excluding then, the testimony of Mrs. Cachenos, as it relates to statements made by Chittenden and looking only to other competent testimony, is there sufficient corroborating indicia of fraud raised to make the rejection of Mrs. Cachenos' testimony an abuse of discretion? We believe there is. These may be listed as follows: (1) It is apparent that Chittenden through Lavin sold Mrs. Cachenos worthless contracts formerly held by a bankrupt corporation for $19,786.83; (2) Chittenden and Lavin were paying Mrs. Cachenos monthly payments on these worthless contracts out of their won pockets and thus had an interest in terminating this expenditure; (3) Chittenden admitted to plaintiff's former attorney that the Lake Havasu transaction was a "loan" while the documentary evidence showed that this was a sale; (4) Lavin instructed Lucero to find 40 acres of land for Chittenden to complete a "deal" with Mrs. Cachenos; (5) the 40 acres found were not related to any business the partnership had in selling lots in the Lake Havasu Subdivision; (6) the 40 acres were transferred to Mrs. Cachenos in

32 separate deeds, although the land involved was 40 contiguous acres, thus lending credence to Mrs. Cachenos' testimony that she was getting 32 separate parcels of uncontiguous land in a plotted subdivision; (7) Chittenden received $8,000 out of the Lake Havasu affair although he held no apparent interest in the partnership; (8) Lavin's partnership received $4,396.41 out of this transaction; and (9) Mrs. Cachenos spent $38,000 for a piece of property having a value of either $2,000 or $8,000.

■ With these independent indicia of fraud, we hold that the trial court abused its discretion in applying the dead man statute to this transaction. Needless to say, if Mrs. Cachenos' testimony is admissible, there are disputed issues of material fact as to the liability of the estate of Ben Chittenden, Kenneth R. Lavin, the partnership of Lake Havasu Estates and the contingent liability of the Arizona Real Estate Recovery Fund. As to these defendants, this matter must be reversed.

■ However, even considering Mrs. Cachenos' testimony and the testimony of all other witnesses, there is simply no evidence that defendants Marcus T. Baumann, Rachel Baumann, Bankers' Finance & Holding Company or Western Surety Company were parties to or involved in any of the alleged fraudulent transactions resulting in damage to Mrs. Cachenos.

By reason of the foregoing, the judgment as to Marcus T. Baumann, Rachel Baumann, Bankers' Finance & Holding Company and Western Surety Company is affirmed. As to defendants Kenneth R. Lavin, the partnership of Kenneth R. Lavin and George J. Lucero, doing business as Lake Havasu Estates, the Estate of Ben Chittenden, deceased, and the Arizona Real Estate Department, the matter is reversed and remanded for further proceedings.

HAIRE, Chief Judge, Division 1, and EUBANK, J., concurring.